HORATIO N. CURTIS, APPELLANT, *v.* SIMON BUTTS, RESPONDENT.

*Ejectment—Evidence of Paramount Title—Description of Lands—Variance.*

A mere probability is not enough to enable the Plaintiff to take the premises in dispute from the Defendant, who holds by a conveyance from the same grantor, and which unquestionably embraces the same premises. The Plaintiff must establish his title affirmatively.

*H. & G. H. Humphreys* for Appellant.
*L. Farrar* for Respondent.

DAVIES, CH. J.—The Plaintiff in his complaint claims to recover ninety-five acres of land, occupied by the Defendant, described as the south half of the west 200 acres of lot No. 34, township No. 2, except five acres on the south-west corner of the said south half of said West 200 acres, and of which the said Plaintiff claimed to be the owner.

The Plaintiff claimed title as deduced from a deed from William Adams to John Love, in which deed the premises were described as lands lying in township No. 2, short range, west of Genesee river, and, a witness on the trial thought, the west part of the lot. This was the testimony of Samuel Owen, the grantee in the next link of the Plaintiff's chain of title.

This was a deed from John Love and his wife to Samuel Owen, conveying all that certain piece or parcel of land situate, lying, and being at the mouth of the Genesee river, on the west side, lying in township No. 2, in the short range, in the district of Northampton, and is the one undivided half of 200 acres of land, as conveyed to the said party of the first part by Doctor William Adams, of Geneva, in the county of Ontario.

The Defendant claims under a deed from the same John Love and wife, dated January 10, 1834, and recorded April 17, 1839, granting and conveying all that certain piece or parcel of land situate, lying, and being in the town of Greece, county of Monroe,

and State of New York, being two hundred acres of the west side of lot (34) thirty-four, in the first section of township number two (2), in the short range, west of the Genesee river.

It is conceded that this deed contains a concise, accurate, and correct description of the lands in question, and under it the Defendant was in possession of the premises in controversy.

The Plaintiff seeks to eject him therefrom, and deduces title from the same John Love, by means of a deed which does not describe the premises in controversy.

The Plaintiff has to recover upon the strength of his own title, and cannot upon the weakness of that of his adversary.

We agree with the Supreme Court, "that it is impossible, from the description in this deed, or from the description contained in any referred to in this deed, for any one to say that the land in question is the land granted or intended to be granted by it to Samuel Owen."

The deed does not locate the land conveyed by it in lot No. 34, or as a part of that lot. It only locates it as being at the mouth of the Genesee river, on the west side thereof, and is further described as being the one undivided half of 200 acres of land, as conveyed to Love by Dr. William Adams, of Geneva, in the county of Ontario. The Plaintiff, to aid the construction to be given to this deed, introduced a partition deed, made between Sir William Pultney and several others, whereby there was set off to John Love, 200 acres on the west end of lot No. 34, in the first division of lots. One William Adams was a party to this partition deed, but it is very clear that this deed is not the one referred to by Samuel Owen and William Love, in their testimony.

The partition deed is dated October 4, 1804. The deed of William Adams to John Love for 200 acres, being at the mouth of the Genesee river, being for the same premises conveyed by Love and wife to Owen, must have been given at least four years before the partition deed was made and executed.

William Love testifies that William Adams was the father of his mother; that his grandfather resided with his father and mother at Salina, Onondaga county. That he recollected when his

grandfather made out the deed; he went to Onondaga Hollow to get it drawn and acknowledged, and when he came home his grandfather showed it to him.

This was in 1800. That his grandfather read part of it to him, and said to him that when he became a man the property would come to him; it was to belong to his father and mother during their natural lives, then it was to fall to him, he paying the other children a certain sum.

That it was for a part of an undivided tract of land conveyed to his grandfather by Oliver Phelps.

Owen testified that after he made the bargain for the land, and they were going off to get it executed by a deed from John Love, William Love showed him a deed his father had from Dr. William Adams to John Love; it was a deed that they talked of in the neighborhood. "They took the deed that day or the next, and went to Onondaga Hollow, and had a deed executed to me from John Love and his wife *from that deed*."

We therefore can trace back the precise premises from the deed of Love to Owen, conveyed by Adams to Love, and by Phelps to Adams. These were a piece or parcel of land situate, lying, and being at the mouth of the Genesee river. Now, by one inspection of the map annexed to the partition deed, is seen that lot No. 34 (the locus in quo) is three or four miles from the mouth of the river, and nearly in the centre of the township.

The vagueness and uncertainty in the description of the premises intended to be conveyed by Love to Owen, are not helped by the partition deed.

As was well remarked by Judge Johnson in the opinion of the Supreme Court, "There is nothing to show certainty that the lands set off and allotted to Love in severalty in that partition, were the lands conveyed to Love and wife by Dr. William Adams.

"A mere probability is not enough to enable the Plaintiff to take the premises in question from the Defendant, who holds them by a conveyance from the same grantees, which unquestionably embraces them.

"It was for the Plaintiff to establish this fact affirmatively."

This clearly he failed to do, and in the view we take of the testimony adduced on the trial, the Supreme Court put the case more favorably for the Plaintiff than the evidence warrants.

It seems to us that this view of the facts demonstrates that the deed from Adams to Love, and the deed from Love to Owen, did not convey the same premises as those partitioned and set off by the partition deed to Love, and by him conveyed to Peter and John P. Bush, jun., and from whom the Defendant derives his title :

1. It is undeniable that the description and location of the premises are essentially different.

2. Adams' deed to Love of the 200 acres at the mouth of the Genesee river, was made and executed four years before the 200 acres on the west end of lot No. 34 were partitioned and conveyed by the partition deed to John Love.

3. It appeared that the land conveyed by Adams to Love had been conveyed by Oliver Phelps to Adams.

Now there is not a scintilla of evidence in the case that the 200 acres conveyed by the partition deed to Love had ever been owned by Phelps, or that he had ever conveyed or assumed to convey the same to Adams.

There is a total failure to identify the premises conveyed by Phelps to Adams, and by Adams to Love, and by Love to Owen, as the same premises set off, partitioned, and conveyed by the partition deed to Love, and by the latter to the Bushes, and from them by sundry conveyances to the Defendant, as one and the same parcel of land.

On the contrary, the inference is strong that they were different.

It was fundamental to the Plaintiff, to establish his right to recover, to show their identity.  Not having done so, it could not be said that he had shown title to the premises conveyed to and occupied by the Defendant.

Upon this testimony the Court properly instructed the jury to

find a verdict for the Defendant, and the judgment upon that verdict should be affirmed, with costs.

All concur.

Affirmed.

JOEL TIFFANY,

State Reporter.
